```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ANGELINA PALMA, as Administrator of the       :
Estate of Felice Palma aka Felix Palma,       :
                                  Plaintiff,  :
v.                                            :        OPINION AND ORDER
                                              :
CABRINI OF WESTCHESTER, doing business        :        22 CV 5430 (VB)
as St. Cabrini Nursing Home; ABC              :
CORPORATION; and ABC PARTNERSHIP,             :
                                  Defendants. :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff commenced this action in New York State Supreme Court, Westchester County, against defendant Cabrini of Westchester d/b/a St. Cabrini Nursing Home ("Cabrini"), as well as its unidentified corporate owners and operators. On behalf of her father's estate, plaintiff alleges Cabrini did not implement sufficient COVID-19 protocols to prevent her father from contracting and dying from COVID-19. Cabrini timely removed the case to this Court. (Doc. #1).

Now pending is plaintiff's motion to remand. (Doc. #6).

For the reasons set forth below, the motion is GRANTED.

## BACKGROUND

In considering a motion to remand, the Court accepts as true all relevant allegations in the complaint and construes all factual ambiguities in the moving party's favor. See Fed. Ins. Co. v. Tyco Int'l Ltd., 422 F. Supp. 2d 357, 391 (S.D.N.Y. 2006). The Court may also consider materials outside the complaint, "such as documents attached to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis." Romero v. DHL

1

Express (U.S.A), Inc., 2016 WL 6584484, at *1 (S.D.N.Y. Nov. 7, 2016), aff'd, 719 F. App'x 80 (2d Cir. 2018) (summary order).[1]

Plaintiff is an administrator of the estate of her father, Felice Palma, who died from COVID-19 on May 7, 2020, when at Cabrini. Plaintiff alleges Cabrini failed to implement appropriate policies, procedures, and staffing prior to the COVID-19 pandemic; failed properly to respond to the pandemic once it began; and failed properly to treat Mr. Palma, which resulted in his death. Plaintiff brings claims under the New York Public Health Law and for negligence, negligence per se, gross negligence, conscious pain and suffering, wrongful death, and nursing home malpractice.

Cabrini argues removal is proper on three grounds: First, it contends defendants were acting at the direction of the Centers for Disease Control and Prevention ("CDC") and the Department of Health and Human Services ("HHS") when implementing Cabrini's COVID-19 protocols, and therefore removal is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Second, it contends the Court has original jurisdiction because plaintiff's claims are completely preempted by the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. §§ 247d-6d(a)(1), (b)(8), (d)(1), (e)(1), such that removal is proper under 28 U.S.C. § 1441(a). And third, it argues plaintiff's complaint raises substantial questions of federal law that should be adjudicated by a federal court pursuant to Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308 (2005).

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

## DISCUSSION

Several courts have considered whether state law claims arising from a health-care facility's implementation of COVID-19 protocols may be removed to federal court based on the federal officer removal statute, the PREP Act, or the Grable doctrine. See, e.g., Rivera v. Eastchester Rehab. & Health Care LLC, 2022 WL 2222979, at *2 (S.D.N.Y. June 21, 2022) (collecting cases). "To date every Circuit court and dozens of other district courts considering these questions" have determined "that removal in cases such as this one is improper and remand is required." Ranieri v. Providence Rest, Inc., 2022 WL 2819411, at *1 (S.D.N.Y. July 19, 2022) (collecting cases); accord Saldana v. Glenhaven Healthcare LLC, 27 F.4th 679, 683 (9th Cir. 2022).

The Court agrees.

I.   Federal Officer Removal Statute

First, Cabrini was not "acting under" a federal officer such that removal is proper under the federal officer removal statute. That nursing homes were declared critical infrastructure businesses at the beginning of the pandemic is insufficient to establish that Cabrini was "carrying out" the duties or tasks of a federal officer. See Saldana v. Glenhaven Healthcare LLC, 27 F.4th at 685 ("It cannot be that the federal government's mere designation of an industry as important—or even critical—is sufficient to federalize an entity's operations and confer federal jurisdiction." (quoting Buljic v. Tyson Foods, Inc., 22 F.4th 730, 740 (8th Cir. 2021)).

Cabrini's reliance on recent cases in which district courts declined to remand actions by employees alleging Tyson Foods failed to implement sufficient COVID-19 protocols is unavailing. Not only was Tyson Foods designated a critical infrastructure business, it "work[ed] directly with the Department of Agriculture and the [U.S. Food Safety and Inspection Service] to

3

guarantee that there was an adequate food supply" for the country during the pandemic, thereby "exhibit[ing] an effort to help assist, or carry out, the duties and tasks of the federal superior." Wazelle v. Tyson Foods, Inc., 2021 WL 2637335, at *4 (N.D. Tex. June 25, 2021); accord Fields v. Brown, 519 F. Supp. 3d 388, 392 (E.D. Tex. 2021). Nursing homes like Cabrini, on the other hand, were obviously not "congregate housing isolation and quarantining units" for the federal government, as Cabrini argues. (Doc. #1, at 11). That Cabrini implemented protocols based on CDC guidance for "Strategies for Optimizing the Supply of Facemasks" and "Using Personal Protective Equipment" does not constitute the carrying out of the acts of the federal government. (Id. at 11 n.8); see Watson v. Phillip Morris Cos., 551 U.S. 142, 153 (2007) ("A private firm's compliance . . . with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official' . . . even if the private firm's activities are highly supervised and monitored.").

In fact, the nearly 800 pages of exhibits submitted by Cabrini with its opposition papers support this conclusion. For example, the declaration of Bonita Burke, an administrator at Cabrini, states Cabrini "kept abreast of all federal . . . and local regulations concerning [COVID-19]" and "relied entirely on the guidance provided by these governmental agencies" in "develop[ing] it[s] policies, protocols, and staff education program." (Doc. #10-2 ¶¶ 4, 6). Cabrini also submitted several directives, updates, and alerts from the New York State Department of Health and HHS. (See, e.g., Docs. ## 10-5, 10-10, 10-11, 10-14, 10-16, 10-17). Far from demonstrating that Cabrini worked "hand-in-hand" with a federal agency, these documents show Cabrini took steps to comply with current regulations and guidance applicable to it as a "private company facing additional regulations because of the pandemic." (Doc. #10 at 23). Therefore, removal under Section 1442(a)(1) is inappropriate.

4

II.     Complete Preemption

Second, the PREP Act does not completely preempt plaintiff's claims, and thus removal under Section 1441(a) is inappropriate. "[A] defendant generally may not remove a case to federal court unless the plaintiff's complaint establishes that the case arises under federal law." McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc., 857 F.3d 141, 145 (2d Cir. 2017). "[A] suit seeking recovery under state law is not transformed into a suit arising under federal law merely because, to resolve it, the court may need to interpret federal law." Sullivan v. Am. Airlines, Inc., 424 F.3d 267, 271 (2d Cir. 2005). For example, a defendant "may not create federal subject-matter jurisdiction" because it anticipates raising a defense under federal law. Id. at 271–72. Only when the federal statute at issue completely preempts the plaintiff's state law claims is removal permitted. See Dupervil v. All. Health Operations, LLC, 516 F. Supp. 3d 238, 251 (E.D.N.Y. 2021), vacated as moot, No. 20-cv-4042 (2d Cir. Aug. 1, 2022).[2]

Federal law completely preempts a state law cause of action when the federal statute is "construed to have such extraordinary preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims." Sullivan v. Am. Airlines, Inc., 424 F.3d at 272. Complete preemption "must be distinguished from ordinary preemption," under which a defendant may argue "that because federal law preempts state law, the defendant cannot be held liable under state law." Id. at 272–73. This form of defensive ordinary preemption, however, does not provide federal jurisdiction. See id.

---

[2]     Dupervil v. Alliance Health Operations, LLC, 516 F. Supp. 3d 238, which was not controlling on this Court even prior to its vacatur, was vacated as moot because the plaintiff voluntarily dismissed the underlying state court action, and therefore may be considered by the Court as persuasive authority. See, e.g., Brown v. Kelly, 609 F.3d 467, 477 (2d Cir. 2010) (treating a Second Circuit decision vacated by the Supreme Court as "persuasive authority," notwithstanding the lack of "precedential authority").

5

Under the PREP Act, the Secretary of HHS is empowered to provide "timely, uniform, and adequate compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure." 42 U.S.C. § 247d-6e(a).[3] As "an immunity statute," the PREP Act "does not create rights, duties, or obligations" and, except for one narrow exception, confers primary jurisdiction over in-scope claims to the Secretary and not to federal courts. Dupervil v. All. Health Operations, LLC, 516 F. Supp. 3d at 251.

Therefore, because "the PREP Act does not provide the exclusive cause of action for claims that fall within its scope," it "does not completely preempt state-law claims within its scope." Dupervil v. All. Health Operations, LLC, 516 F. Supp. 3d at 250–51. Here, the PREP Act does not "provide the exclusive cause of action" for plaintiff's state law claims or "set forth procedures and remedies governing [these] cause[s] of action"; thus, they are not completely preempted by the PREP Act. Id.

Moreover, even if the PREP Act did completely preempt in-scope claims, plaintiff does not assert PREP Act claims for failure of a covered countermeasure; instead, she asserts state law claims for negligence, nursing home malpractice, and wrongful death, among others. Dupervil v. All. Health Operations, LLC, 516 F. Supp. 3d at 255 (claims that nursing home failed to separate residents, enforce social distancing and mask-wearing, or cancel group activities were not actions

---

[3]  A "covered countermeasure" means "(A) a qualified pandemic or epidemic product . . .; (B) a security countermeasure . . .; (C) a drug . . ., biological product . . ., or device . . ., that is authorized for emergency use . . .; or (D) a respiratory protective device that is approved by the National Institute for Occupational Safety and Health . . . and that the Secretary determines to be a priority for use during a public health emergency." 42 U.S.C. § 247d-6d(i)(1). A "qualified pandemic or epidemic product" means a drug, biological product, or device that is "manufactured, used, designed, developed, modified, licensed, or procured, to diagnose, mitigate, prevent, treat, or cure a pandemic or epidemic; or to limit the harm such pandemic or epidemic might otherwise cause." 42 U.S.C. § 247d-6d(i)(7). A "security countermeasure" means a drug, biological product, or device "that the Secretary determines to be a priority . . . to diagnose, mitigate, prevent, or treat harm." 42 U.S.C. § 247d-6b(c)(1)(B).

"administering—or even prioritizing or purposefully allocating—a drug, biological product, or device to an individual within the meaning of the PREP Act").

Likewise, plaintiff's allegations arising from defendants' "willful" and "wanton" conduct do not fall within the exclusive federal cause of action for "willful misconduct" by a covered person under PREP.  (Doc. #1-1 ¶¶ 189, 279, 280, 295, 296); 42 U.S.C. § 247d-6d(c)(1)(A).  That is, because plaintiff's claims do not involve the administration or use of certain drugs, biological products, or devices, those claims are not claims of "willful misconduct" in administering or using countermeasures covered by the PREP Act.  See Leroy v. Hume, 554 F. Supp. 3d 470, 474 n.1 (E.D.N.Y. 2021) (claims for "reckless misconduct, wanton, willful, reckless, and/or grossly negligent medical malpractice" did not assert "willful misconduct" claims under the PREP Act); see also Shapnik v. Hebrew Home for the Aged at Riverdale, 535 F. Supp. 3d 301, 317 (S.D.N.Y. 2021) (punitive damages claims for reckless and intentional conduct were derivative of plaintiff's negligence claims and not PREP Act claims for "willful misconduct").

Moreover, even if plaintiff alleged willful misconduct PREP Act claims, the U.S. District Court for the District of Columbia is the exclusive forum for such claims.  See 42 U.S.C. § 247d-6d(e)(1) (actions for willful misconduct under PREP "shall be filed and maintained only in the United States District Court for the District of Columbia"); accord Perez v. Oxford Univ., 2022 WL 1468438, at *2 (S.D.N.Y. May 10, 2022).  Therefore, this Court would not have subject matter jurisdiction over those claims.

Accordingly, the Court does not have original jurisdiction over plaintiff's claims and removal is improper on that ground.

III.   Grable Doctrine

Finally, federal jurisdiction pursuant to the Grable doctrine does not exist here because none of plaintiff's claims necessarily raises a federal issue. That Cabrini may have an affirmative defense to plaintiff's claims based on the PREP Act does not show that plaintiff's "claims are affirmatively premised on, or on their face necessarily require resolution of, the PREP Act." Dupervil v. All. Health Operations, LLC, 516 F. Supp. 3d at 258 (holding an anticipated immunity defense under the PREP Act is insufficient for removal under Grable). Cabrini is correct that "the PREP Act, and its implementation to combat COVID-19, involves substantial federal issues." (Doc. #10 at 27). But here, plaintiff does not bring PREP Act claims, and resolution of the PREP Act is not "an essential element of any of Plaintiff's claims." Dupervil v. All. Health Operations, LLC, 516 F. Supp. 3d at 259.

Therefore, removal is not proper under the Grable doctrine.

## CONCLUSION

The motion to remand is GRANTED.

The initial conference scheduled for August 18, 2022, at 12:00 p.m., is cancelled.

The Clerk is instructed to terminate the motion (Doc. #6) and remand this case to Supreme Court, Westchester County.

Dated: August 15, 2022
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge